FILED
10/03/2018
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 21, 2018 Session

## JANET THORNTON v. COFFEE COUNTY BOARD OF EDUCATION

Appeal from the Chancery Court for Coffee County
No. 2017-cv-255    Vanessa Jackson, Judge
_____

### No. M2018-00300-COA-R9-CV
_____

This interlocutory appeal involves a complaint for damages under the Public Employee Political Freedom Act. The chancery court transferred the case to circuit court after determining that only unliquidated damages were "available" under the statute. We conclude that the complaint failed to allege any liquidated damages. As such, the chancery court correctly determined that it lacked subject matter jurisdiction to adjudicate this case. The trial court's decision to transfer this case to circuit court is therefore affirmed.

**Tenn. R. App. P 9 Interlocutory Appeal; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P. J., W.S., delivered the opinion of the court, in which BRANDON O. GIBSON and KENNY ARMSTRONG, JJ., joined.

Terry A. Fann and Kerry E. Knox, Murfreesboro, Tennessee, for the appellant, Janet Thornton.

Kenneth S. Williams, Cookeville, Tennessee, for the appellee, Coffee County Board of Education.

## OPINION

### Background

This case comes to us as a Rule 9 interlocutory appeal from the Chancery Court of Coffee County, Tennessee ("trial court"). Plaintiff/Appellant Janet Thornton ("Appellant") was employed as the Health Services Director for the Defendant/Appellee

Coffee County Board of Education ("the Board") for twenty-three years before she was informed, in April of 2017, that her position would not be renewed for the upcoming 2017–2018 school year. Appellant, believing that the decision not to renew her position was in retaliation for discussions she had with certain elected members of the Coffee County School Board, filed a complaint on August 14, 2017, alleging damages under Tennessee's Public Employee Political Freedom Act ("PEPFA"). Appellant alleged that she suffered embarrassment, humiliation, and lost wages and benefits as a result of losing her position. Appellant's complaint expressly demanded a jury.

The Board responded on September 7, 2017, by filing a motion to dismiss or to transfer the case to circuit court and to strike the jury demand. Specifically, the Board alleged that chancery court lacked subject matter jurisdiction to hear Appellant's case because her claims involved only unliquidated damages over which the chancery court does not have subject matter jurisdiction. According to the Board, the case must therefore be heard in circuit court where the Appellant would have no right to a jury trial. In response, Appellant asserted that not all of the damages sought were unliquidated and that the damages available under PEPFA should not be limited to common law unliquidated damages.

On November 27, 2017, the trial court entered an order granting the Board's motion, determining that "[t]he damages sought by the [Appellant] and available under PEPFA are unliquidated." The trial court struck the jury demand from Appellant's complaint and ordered that the case be transferred to the Circuit Court for Coffee County. Appellant then filed a Motion for Interlocutory Appeal on December 22, 2017, which was unopposed by the Board. An agreed order granting the motion was entered February 12, 2018. This Court subsequently accepted the interlocutory appeal, and the trial court clerk certified the appellate record on April 11, 2018.

## Issues Presented

In her application for an interlocutory appeal, Appellant framed the issue as whether a PEPFA action may be filed in chancery or circuit court. In granting the application, this Court outlined an additional issue as follows: "whether the damages sought by [Appellant] are damages over which the Chancery Court has jurisdiction under Tenn. Code Ann. § 16-11-101 et seq." Because we conclude that the chancery court has no jurisdiction over the damages sought by Appellant in this case, we affirm the transfer of this case to circuit court.

## Standard of Review

The trial court granted the Board's motion to dismiss or transfer upon determining that it lacked subject matter jurisdiction. The Tennessee Supreme Court has explained that:

Subject matter jurisdiction involves a court's lawful authority to adjudicate a controversy brought before it. *See Meighan v. U.S. Sprint Commc'ns Co.,* 924 S.W.2d 632, 639 (Tenn. 1996); *Standard Sur. & Cas. Co. v. Sloan,* 180 Tenn. 220, 173 S.W.2d 436, 440 (1943). Subject matter jurisdiction depends on the nature of the cause of action and the relief sought, *see Landers v. Jones,* 872 S.W.2d 674, 675 (Tenn. 1994), and can only be conferred on a court by the constitution or a legislative act. *See Kane v. Kane,* 547 S.W.2d 559, 560 (Tenn. 1977); *Computer Shoppe, Inc. v. State,* 780 S.W.2d 729, 734 (Tenn. Ct. App. 1989). Where subject matter jurisdiction is challenged under Rule 12.02(1), the party asserting that subject matter jurisdiction exists . . . has the burden of proof. *See Redwing v. Catholic Bishop for the Diocese of Memphis,* 363 S.W.3d 436, 445 (Tenn. 2012) (citing *Staats v. McKinnon,* 206 S.W.3d 532, 543 (Tenn. Ct. App. 2006)). Since a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is de novo, without a presumption of correctness. *Northland Inc. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000).

*Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712–713 (Tenn. 2012). Accordingly, we review the present case de novo on the record with no presumption of correctness. *Id.* Likewise, we review the trial court's interpretation of PEPFA de novo with no presumption of correctness. *In re Angela E.,* 303 S.W.3d 240, 246 (Tenn. 2010) ("Questions of law, including issues of statutory interpretation, are reviewed de novo with no presumption of correctness.").

## Discussion

The issue presented in this appeal is narrow and turns on whether the Appellant's PEPFA claim was properly brought in chancery court. PEPFA provides that "no public employee shall be prohibited from communicating with an elected public official for any job-related purpose whatsoever." Tenn. Code Ann. § 8-50-602(a). The Act further provides that "[i]t is unlawful for any public employer to discipline, threaten to discipline or otherwise discriminate against an employee because such employee exercised that employee's right to communicate with an elected public official." Tenn. Code Ann. § 8-50-603(a). Regarding damages, PEPFA states only that a "public employee shall be entitled to treble damages plus reasonable attorney fees" if a court "of competent jurisdiction determines that a public employer has disciplined, threatened to discipline or otherwise discriminated against an employee because such an employee exercised the rights provided" by PEPFA. Tenn. Code Ann. § 8-50-603(b). Thus, the plain language of PEPFA provides no significant guidance as to the type of damages available in a PEPFA claim.

Likewise, the act does not mandate that PEPFA claims be brought in a certain court but rather requires that the claim be brought in a "court of competent jurisdiction." Tenn. Code Ann. § 8-50-603(b). In Tennessee, circuit courts and chancery courts exercise concurrent jurisdiction over most civil cases:

> The chancery court has concurrent jurisdiction, with the circuit court, of all civil causes of action, triable in the circuit court, except for unliquidated damages for injuries to person or character, and except for unliquidated damages for injuries to property not resulting from a breach of oral or written contract; and no demurrer for want of jurisdiction of the cause of action shall be sustained in the chancery court, except in the cases excepted.

Tenn. Code Ann. § 16-11-102. Thus, section 16-11-102 provides narrow exceptions to the concurrent jurisdiction of circuit and chancery court, one of them being that claims for unliquidated damages to person or character must be filed in the circuit court.

Based on this statute, both Appellant and the Board admit that if the damages sought are solely unliquidated, the case must be transferred to circuit court. *Id.* Alternatively, if any portion of Appellant's claimed damages qualify as liquidated, the chancery court may exercise jurisdiction, and the Appellant would be entitled to a jury trial.[1] *See* Tenn. Code Ann. § 21-1-103; *see also* **Pruitt v. Talentino**, 464 S.W.2d 294, 296 (Tenn. Ct. App. 1970) ("[W]here the chancery court has obtained jurisdiction over some portion or feature of a controversy it may grant full relief in the same manner as could a court of law."). We therefore turn to address whether Appellant has in fact raised a proper claim for liquidated damages in this case.

### A. Damages pursuant to PEPFA

The order granting the Rule 9 application makes clear that there are two distinct issues underlying the trial court's decision with regard to liquidated damages. First, as the parties have argued, whether PEPFA allows a claim for liquidated damages, or whether, as the Board argues, a claim for liquidated damages does not lie under PEPFA. Second, whether Appellant has actually pleaded a claim for liquidated damages in this case. Both questions must be answered in the affirmative in order to vest jurisdiction with the chancery court in this case. Yet, the parties, particularly Appellant, chose to focus their written arguments to this Court solely on whether PEPFA allows for liquidated damages.[2]

---

[1] It is undisputed by the parties that should this case remain in the chancery court, Appellant is entitled to a jury trial, whereas there is no right to a jury trial in circuit court. *See* **Young v. City of LaFollette**, 479 S.W.3d 785, 794–95 (Tenn. 2015) (concluding that there was no right to a jury trial for plaintiff's Tennessee Public Protection Act claim, as there was no right to a jury trial at common law for such a claim and there is no statutory right to a jury trial in circuit court). This important distinction seems to be the motivation behind this interlocutory appeal.

[2] The Board appeared to concede at oral argument, however, that a PEPFA claim could

- 4 -

Indeed, Appellant's brief contains little, if any, analysis as to whether the damages she sought in this case qualify as liquidated damages. Because we conclude that Appellant's complaint fails to sufficiently allege any claim for liquidated damages, we hold that the chancery court lacked jurisdiction over Appellant's claim without reaching the question of whether a claim for liquidated damages lies under PEPFA. *See generally **Doe v. Mama Taori's Premium Pizza, LLC***, No. M1998-00992-COA-R9-CV, 2001 WL 327906, at *10 (Tenn. Ct. App. Apr. 5, 2001) (citing **Super Flea Mkt. v. Olsen**, 677 S.W.2d 449, 451 (Tenn. 1984)) ("Judicial economy prompts us to avoid rendering advisory opinions or deciding abstract legal questions."). Thus, regardless of whether PEPFA authorizes a claim for liquidated damages, the narrow issue presented by this appeal can be decided by simple examination of the damages sought by Appellant.

### B. Appellant's Damages

There is little Tennessee case law clarifying the difference between liquidated and unliquidated damages. Indeed, this Court has previously noted that "whether [an] amount involved qualifies as 'liquidated' is not always clear[.]" ***PNC Multifamily Capital Inst. Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.***, 387 S.W.3d 525, 557–58 (Tenn. Ct. App. 2012) (quoting 22 Am. Jur.2d *Damages* § 465 (2012)).[3] In ***PNC***, however, this Court provided a framework for classifying damages as liquidated or unliquidated:

> Unliquidated damages are those damages that have not been previously specified or contractually provided for. . . . in general, "liquidated" means "made certain or fixed by agreement of the parties or by operation of law." On the other hand, "**unliquidated damages" are damages that have not been determined or calculated, or not yet reduced to a certainty in respect to amount**.
> It has been held that a bona fide dispute as to the amount of a claim is not a bar to the recovery of interest under this rule, but it has also been held that such a dispute does bar recovery of interest as of right.
> **A liquidated claim exists if the plaintiff has made a demand for a specific sum** that the defendant allegedly unlawfully retained, because such a claim is certain and known to the defendant before the suit is filed. A claim that was for a fixed amount that had become due and payable on a set date is also liquidated, even though the verdict for the plaintiff turns out to be less than the figure demanded, as this fact does not necessarily convert a claim for an otherwise liquidated amount into a claim for an uncertain and therefore unliquidated amount.

---

potentially entail liquidated damages under circumstances not at issue in this case. In any event, we do not reach this issue.

[3] The stated law concerning liquidated damages is currently to be found at 22 Am. Jur. 2d *Damages* § 479, last updated in 2018.

***Id.*** at 557–558 (quoting 22 Am. Jur.2d *Damages* § 465) (emphasis added).

As we interpret the language of ***PNC***, in order to qualify as liquidated, the requested damages must involve a specified sum or be ascertainable or calculable from the pleadings. *See **Grace v. Curley***, 3 Tenn. App. 1 (Tenn. Ct. App. 1926) (noting that liquidated damages are "ascertainable by simple calculation **from the papers**," whereas an unliquidated amount "must be ascertained by a jury upon proof.") (emphasis added). Thus, "[d]amages may be referred to as unliquidated when the complaint alleges only general damages without demanding a specific amount." 22 Am. Jur.2d *Damages* § 3; *see also* 22 Am. Jur.2d *Damages* § 504 ("Damages are 'liquidated' when the proper amount to be awarded can be determined with exactness from the cause of action **as pleaded**[.]") (emphasis added). Our research reveals that this interpretation is consistent with that of other jurisdictions. *See **Miami Beverly LLC v. City of Miami***, 225 So.3d 989, 992 (Fla. Dist. Ct. App. 2017) ("Damages are liquidated when the proper amount to be awarded can be determined with exactness from the cause of action as pleaded, i.e., from a pleaded agreement between the parties, by an arithmetical calculation or by application of definite rules of law . . . [d]amages are not liquidated if testimony is required to determine how to evaluate the damages."); *see also **Colonial Bank v. Boulder Bankcard Processing Inc.***, 563 S.E.2d 492, 498 (Ga. Ct. App. 2002) ("Damages are liquidated when they are an amount certain and fixed, either by the act and agreement of the parties, or by operation of law; a sum which cannot be changed by the proof; it is so much or nothing. . . . undisputed evidence of the amount of damages . . . does not convert unliquidated damages to liquidated damages."); ***Hall v. Rowe***, 439 S.W.3d 183, 188 (Ky. Ct. App. 2014) ("Liquidated claims are of such a nature that the amount is capable of ascertainment by mere computation, can be established with reasonable certainty, can be ascertained in accordance with fixed rules of evidence and known standards of value, or can be determined by reference to well-established market values."); ***Smith v. E.S. Wagner Co.***, 74 N.E.3d 963, 974 (Ohio Ct. App. 2016) ("A liquidated claim is one that can be determined with exactness from the agreement between the parties or by arithmetical process or by the application of definite rules of law.").

As a reminder, it is well-settled that Appellant has the burden to establish jurisdiction in this case by showing that the damages she seeks are damages over which the chancery court has jurisdiction. *See **Redwing v. Catholic Bishop for the Diocese of Memphis**,* 363 S.W.3d 436, 445 (Tenn. 2012). From our review of Appellant's complaint and her brief to this Court, however, we simply cannot conclude that Appellant has sufficiently alleged liquidated damages so as to invoke the subject matter jurisdiction of the chancery court. As an initial matter, we again note that despite this Court's clear direction to brief the issue of whether "the damages sought by" Appellant are of the kind that invoke the chancery court's jurisdiction under Tenn. Code Ann. section 16-11-102, Appellant has chosen not to brief this issue. "It is not the role of the courts, trial or

appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." **Sneed v. Bd. of Prof'l Responsibility of Supreme Court**, 301 S.W.3d 603, 615 (Tenn. 2010).

Nonetheless, we have reviewed Appellant's complaint and conclude that it does not sufficiently raise a claim for liquidated damages. First, there is no dispute that Appellant's alleged damages as a result of embarrassment and humiliation do not constitute liquidated damages. *See* **Hodge v. Craig**, No. M2009-00930-COA-R3-CV, 2010 WL 4024990, at *9 (Tenn. Ct. App. Oct. 13, 2010), aff'd in part, rev'd in part on other grounds, 382 S.W.3d 325 (Tenn. 2012) (stating that "damages for emotional distress . . . are classified as unliquidated damages"); *see also* 23 Cal. Jur. 3d *Damages* § 124 ("Damages for the intangible, noneconomic aspects of mental and emotional injury are inherently nonpecuniary, unliquidated, and not readily subject to precise calculation[.]"). Rather, the only dispute involves whether Appellant's claim for backpay and benefits qualifies as liquidated damages.

Respectfully, Appellant's damages demand does not involve a specified sum, as was involved in **PNC**. *See* **PNC**, 387 S.W.3d at 558 (concluding that damages were not unliquidated where "the exact amount of the alleged misappropriation (i.e., $347,265.67) is averred in this case"). Neither may we conclude that the amount of damages sought is ascertainable by simple calculation from the material contained in the pleadings. On the contrary, the complaint contains a single sentence alleging the damages Appellant suffered as a result of the termination of her employment: "Defendant's conduct caused embarrassment, humiliation, and economic damage in the form of lost wages and benefits." While this Court recognizes, and the Board admits, that lost wages and benefits have the potential to be liquidated damages in certain circumstances, nothing provided by the Appellant establishes her lost wages and benefits to a reasonable certainty. *See* **PNC**, 387 S.W.3d at 558 ("[U]nliquidated damages are damages that have not been determined or calculated, or not yet reduced to a certainty in respect to amount.").

Even under the most liberal reading of **PNC**, Appellant's complaint is devoid of any information that might render Appellant's damages liquidated. Had the Appellant enlightened us, for example, as to the amount of salary she received in her former position, or the amount of time for which she seeks lost wages, ascertaining a specified sum would perhaps be less tenuous. While case law supports the notion that liquidated damages are those that can be calculated based upon information in the pleadings, there is simply nothing for us to calculate or compute here. *See* **Miami Beverly LLC**, 225 So.3d at 992. Moreover, Appellant easily could have amended the complaint in order to properly specify her liquidated damages. As the complaint stands, however, any ascertainment of the Appellant's damages would be blind conjecture by this Court.

In light of the explication of liquidated and unliquidated damages in *PNC*, as well as case law from surrounding states, we cannot conclude that the Appellant has pleaded a claim for liquidated damages such that the chancery court can exercise subject matter jurisdiction in this case. That being said, this Opinion should not be understood to mean that lost wages and benefits are, categorically, unliquidated damages. Rather, we simply conclude that under the particular facts of this case, the Appellant has not provided sufficient information to render her request for backpay and benefits liquidated. Because the Appellant has brought a claim only for unliquidated damages to person or character, chancery court lacked jurisdiction over this matter. Tenn. Code Ann. § 16-11-102.

Accordingly, we conclude that the trial court correctly determined that this case should be transferred to the Circuit Court for Coffee County. Although we decline to reach a conclusion on the full scope of damages available under PEPFA, "[i]t is well settled that this Court will affirm the Order of the trial court[ ] . . . if it finds that the trial court reached the correct result, 'irrespective of the reasons stated.'" *Shoemake v. Omniquip Intern, Inc.*, 152 S.W.3d 567, 577 (Tenn. Ct. App. 2003) (quoting *Clark v. Metropolitan Gov't of Nashville and Davidson Cty.*, 827 S.W.2d 312, 317 (Tenn. Ct. App. 1991)). Because we have determined that Appellant sought only unliquidated damages in her complaint, the trial court reached the correct result.

### Conclusion

The judgment of the Chancery Court of Coffee County is affirmed, and the case is remanded to the trial court with instructions to transfer this action to the Circuit Court of Coffee County. Costs of this appeal shall be taxed to the Appellant, Janet Thornton, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE