# Third District Court of Appeal

## State of Florida

Opinion filed May 1, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-1369
Lower Tribunal No. 11-27179
_____

**Lincoln Mews Condominium Association, Inc.,**
Appellant,

vs.

**Stephanie Harris,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Rodolfo A. Ruiz, Judge.

Gasdick, Stanton & Early, P.A., and August J. Stanton, III and Diva N. Totten (Orlando), for appellant.

Crabtree & Auslander and John G. Crabtree, Charles M. Auslander, Brian C. Tackenberg and Emily Cabrera, for appellee.

Before SALTER and MILLER, JJ., and LEBAN, Senior Judge.

SALTER, J.

Lincoln Mews Condominium Association, Inc. (the "Association"), appeals an order denying its motion to vacate a default final judgment against the Association for $500,000.00 entered in favor of a unit owner ("Ms. Harris") in September 2013. We reverse the order and remand the case to the trial court to vacate the void final judgment.[1]

The 2011 Lawsuit and Its Pro Se Phase

Ms. Harris commenced her circuit court lawsuit in 2011. Initially she was represented by counsel. The complaint is difficult to decipher, purporting to have been brought by Ms. Harris "individually and on behalf of [the Association]" against the President of the Association ("Mr. Garcia") and the Association itself. The initial complaint contended that a restrictive covenant gave unit owners at the Lincoln Mews Condominium a right of first refusal which was being violated by Mr. Garcia. Paragraph 13 of the complaint alleged:

> [Ms. Harris] has, and will put forth evidence in this motion, that Mr. Garcia has the intent to defraud the other unit owners by short selling his unit, by selling to a straw buyer and then reselling the property at a price above market value and thereby escheating the bank of some $30,000.00 and the Association of the certificate of use and other monies owed.

---

[1] The final judgment in question was erroneously entered by a predecessor trial judge based on representations by Ms. Harris's then-counsel at a motion calendar hearing at which neither the Association nor any attorney representing the Association was present—for the appropriate reasons described in this opinion.

2

Ms. Harris sought an order "[c]ommanding" the Association to enforce the covenant, declaring that Mr. Garcia's alleged sale could not proceed without complying with the "first right of refusal" [sic], and "[c]ommanding" Mr. Garcia to comply with an unspecified "certificate of use violation which has running a lien since August 4th, 2011." A second count sought a declaratory judgment regarding the "interpretation and application of the covenants written in the Association's bylaws."

Mr. Garcia, through counsel, filed a motion to dismiss on numerous grounds, including (1) a contention that "Harris can not bring an action on behalf of [the Association] without approval from a majority of the Board of Directors"; and (2) Ms. Harris's failure to attach the Declaration of Condominium or the Association bylaws to her complaint. (Original emphasis). Two weeks later, Ms. Harris moved for a default against Mr. Garcia and the Association (despite the fact, confirmed by a docket entry, that Mr. Garcia had responded to the complaint).

Shortly after this, Ms. Harris and her attorney parted ways,[2] and Ms. Harris began to file and serve pro se pleadings. Two of these are particularly pertinent here. In a "FIRST AMMENDED COMPLAINT" [sic] filed December 22, 2011, but indicating that it was served on an unspecified day in November 2011, Ms. Harris dropped the Association as a defendant in the caption and body of the three-

---

[2] Ms. Harris filed a stipulation for substitution as a pro se, and her attorney obtained an order discharging him from further responsibility in the lawsuit.

count amended complaint. The pro se first amended complaint is a mashup of alleged claims for "theft of service upon a senior citizen," "self serving use of lien as extortion," and Mr. Garcia's purported "refusal to quiet title due to lien." The pleading states no legally cognizable claim and never mentions a claim for relief as against the Association.

Only five days later, Ms. Harris filed a second pro se "1st-First Amended Complaint" against the Association. Styled a "motion" in the body of the pleading, Ms. Harris alleged that she "represents the Majority of the Board of Directors, and currently owns 73% of the physical property held by [the Association]." In this pleading, Ms. Harris asked for the denial of Mr. Garcia's motion to dismiss and for a default order against the Association "for damages in the amount of $2.4 Million Dollars." That damages amount was not itemized or explained in any detail. Although the December 22, 2011, first amended complaint showed that the Association had been dropped as a defendant, Ms. Harris did not have her second pro se first amended complaint (actually her second pro se complaint) served on the Association.

In February of 2012, Ms. Harris retained substitute counsel, who filed a "Third Amended Complaint" against Mr. Garcia, four other (newly added) defendants, and the Association; this amendment also was not served on the

Association, despite the fact that the Association had been dropped as a defendant two months earlier.

The Third Amended Complaint, even more colorful than the prior versions, claimed "2.4 million dollars in property damages committed by [the Association]" and "1 million dollars for each of the 5 SLAPP suits and reputation of the persecution of [Ms. Harris], in mental anguish, lost career loss of sale of property and interference of audit, perjured complaints to multiple government agency" [sic]. Next, Ms. Harris's attorney moved for judicial default against the Association, with a certificate of service by mail to the Association building (1525 Lenox Avenue, Miami Beach) rather than to any unit number or by identifying any authorized individual. Ms. Harris also voluntarily dismissed all of the individual defendants, listing the Association as the only remaining defendant (and ignoring Ms. Harris's pro se amended complaint that had dropped the Association as a defendant in that pleading). The then-presiding judge granted the motion, which had simply omitted the procedural history. No one from the Association appeared to oppose the motion.

In September 2013, Ms. Harris moved for a final judgment against the Association based on the judicial default. Through counsel, she represented that "[a]ffidavits of amounts due and owing, costs and attorney's fees will be filed under a separate filing," in order to liquidate Ms. Harris's claim. Any such

5

documents are not in the record and are not reflected on the docket. There is no indication that any such affidavits were provided to the Association.

Days later, the then-presiding trial judge granted the motion and entered a "final judgment after default," in favor of Ms. Harris and against the Association, for $500,000.00. Neither the pleadings nor any itemized summary establishes a basis for that damages amount.

The case went into hibernation for four years, whereupon Ms. Harris brought in new counsel for collection, moved for the appointment of a receiver over the entire condominium, and moved for a writ of garnishment. At this point, the Association retained counsel and moved for relief from judgment under Florida Rule of Civil Procedure 1.540(b), reciting the tangled procedural history and additional facts:

- "Lincoln Mews Condominium Association, Inc." was a fictitious name and not a corporation. The entity to be served at the outset of the case was "Lincoln Mews Condominium, Inc."

- The summons for the condominium defendant was served on the daughter of Ms. Harris, who was not an officer or agent of the condominium.

- The condominium address used for service of process was a unit owned by an individual who was not the condominium's registered agent or otherwise authorized to accept the original complaint.

The motion to vacate further alleged that the judgment was void because the Association was dropped from the case in the pro se first amended complaint and was rendered without a trial on unliquidated damages (and without notice of the alleged damages to the allegedly-defaulted defendant). Following a hearing before the successor trial judge, the motion to vacate was denied. This appeal followed.

Analysis

The Association's motion to vacate the default final judgment is reviewed under the de novo standard of review in this case, as it was only timely if the underlying judgment is void. Nationstar Mortgage, LLC v. Diaz, 227 So. 3d 726, 729 (Fla. 3d DCA 2017). The unusual record in this case indicates that the final judgment entered by the predecessor judge was indeed void.

Loss of Personal Jurisdiction by Dropping Party

Ms. Harris's pro se first amended complaint named only Mr. Garcia as a defendant, thereby dropping the Association as a defendant. As a result of that pleading, the trial court lost in personam jurisdiction over the Association. See Sas v. Postman, 687 So. 2d 54 (Fla. 3d DCA 1997). This was a legal problem created by a pro se plaintiff. That action by Ms. Harris required the second and later

7

version of a complaint against the Association to be served with new process. Ms. Harris did not do so.

These authorities remove this case from the precedent advanced by counsel for Ms. Harris at the hearing on the motion to vacate, <u>Kathleen G. Kozinski, P.A. v. Phillips</u>, 126 So. 3d 1264 (Fla. 4th DCA 2013). In that case a final judgment was voidable, not void, because there were indications that the defendant was aware of the action. Here, the pleadings after the first amended complaint dropped the Association did not restore jurisdiction, required no action on the part of the Association, and were unaffected by notice or constructive notice to the Association. A summons properly served was required to establish jurisdiction following the deletion of the Association from the caption, body, and prayer for relief in Ms. Harris's pro se first amended complaint, as if the case against the Association was commencing anew. <u>See</u> <u>Seymour v. Panchita Inv., Inc.</u>, 28 So. 3d 194 (Fla. 3d DCA 2010) (failure to perfect service renders a subsequent judgment void, not voidable).

<u>Failure to Liquidate Damages</u>

The classification of damages as "liquidated" or "unliquidated" is also reviewed under the de novo standard of review. <u>See</u> <u>Miami Beverly LLC v. City of Miami</u>, 225 So. 3d 989, 992 (Fla. 3d DCA 2017). "The failure to provide a defendant with notice and an opportunity to be heard where the damages are

8

unliquidated is a due process violation and constitutes fundamental error requiring that such damages be set aside." Id. at 993.

Ms. Harris provided no information showing a liquidated damages amount or an amount claimed totaling $500,000.00. No notice of any basis for that amount was filed or provided to the Association, despite Ms. Harris's representation in her motion for entry of a final default judgment that "[a]ffidavits of amounts due and owing, costs and attorney's fees will be filed under a separate filing." The judgment rendered on the fanciful[3] and unliquidated claims in Ms. Harris's various complaints, with no prior notice of the amount sought provided to the allegedly-defaulting defendant or otherwise made a part of the record, is void. See Ciprian-Escapa v. City of Orlando, 172 So. 3d 485, 488-91 (Fla. 5th DCA 2015) (discussing the requirements of Florida Rule of Civil Procedure 1.440(c) and related precedent).

Conclusion

Following a thorough review of the strange and protracted record before us, we conclude that the final judgment entered in 2013 by the predecessor judge was

---

[3] Ms. Harris's Third Amended Complaint, her final claims for damages, sheds no light on the quantum of the alleged property damages, misapplications of funds, receivership expenses, "SLAPP suit" damages, and "gross diminishment in value." Rather, the prayer for relief seeks "an award of compensatory damages in an amount to be determined at time of trial," "an award of general damages in an amount to be proven at time of trial," and "an award of punitive damages in an amount to be determined at time of trial."

9

(1) void in its entirety, as to both liability and damages, because Ms. Harris dropped the Association as a party and never re-served the Association with original process, and (2) also, and independently, void as to the award of damages—a figure having no discernible basis in the operative complaint or any other part of the circuit court record. The order below is reversed and the case remanded for the entry of an order vacating the final judgment after default.